IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 10-20176 |
| ) | |
| v. ) | |
| ) | |
| TRAVONTE JOHNSON, ) | |
| ) | |
| Defendant. ) | |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Travonte Johnson's ("Johnson") January 7, 2011 Motion to Suppress Evidence and Statements and Johnson's August 5, 2011 Objections to the Report and Recommendation of the Magistrate Judge. (Mot. to Suppress Evidence and Statements and Mem. in Supp., ECF No. 28; Def.'s Objections to Report and Recommendation of the United States Magistrate Judge, ECF No. 68 ("Objections").) Plaintiff the United States of America (the "Government") has not responded to Johnson's objections. The Magistrate Judge recommends that the Court deny Johnson's Motion to Suppress. (See Report and Recommendation, ECF No. 66.) ("Report") Johnson's objections are OVERRULED, the Magistrate Judge's Report is ADOPTED, and the Motion to Suppress is DENIED.

**I.     Background**

On May 9, 2011, the Magistrate judge held a hearing at which Detective Willie Bryant ("Bryant"), Detective Jonathan Overly ("Overly"), and Sergeant Jeffrey Dunn ("Dunn" and, collectively, the "Officers") of the Memphis Police Department ("MPD") testified for the Government, and Tamika Bland ("Bland") testified for Johnson. (Report 1; Suppression Hr'g Tr. 1, May 9, 2011, ECF No. 56 ("Tr.").) After considering the witnesses' testimony, the Magistrate Judge concluded that the Officers' testimony was credible and that, to the extent her testimony conflicted with the Officers' testimony, Bland's testimony was not. (Id. at 2.) The Magistrate Judge found not credible Bland's testimony about the circumstances under which she gave verbal consent to search her house. (Id.) Having credited the Officers' testimony over Johnson's, the Magistrate Judge found as follows.

On March 25, 2009, approximately five to six MPD officers, including Bryant and Overly, who testified at the hearing, arrived at Bland's house after receiving a citizen complaint about possible drug dealing there. (Id. at 3.) On arriving, they noticed a person, later identified as Johnson, standing in a doorway that connected the garage to the house. He immediately entered the house and closed the door. (Id.) Bryant, Overly, and another officer walked into the garage and knocked on the door that had just been closed. (Id.) The

others dispersed around the house to monitor the perimeter. (Id. at 3-4.) All of the officers wore black vests marked "Police." (Id. at 4.)

When Bland answered the door, Bryant told her that the officers were investigating a drug complaint and asked for permission to search her house. (Id.) She responded that she did not have "anything to hide." (Id.) The officers did not demand to enter Bland's house, state that she had to let them enter her house, draw their weapons, threaten her, speak in raised voices, blare their sirens, or use a bullhorn; they simply asked permission to search the house. (Id. at 4-7.) Although Bland was "upset and shooken up at the time," she did not feel "bullied" into letting the officers search her house. (Id. at 6.)

On entering the house, the officers observed a handgun on the kitchen table, which they seized. (Id. at 7.) When Bland told them that her boyfriend was in the back of the house, they went there and found Johnson in a bedroom pretending to sleep. (Id.) The officers brought Johnson to the front of the house, conducted a warrants check, learned that he had an outstanding warrant, and arrested him. (Id.)

After finding Johnson, the officers presented Bland with a written consent to search form, which she signed in their presence. (Id.) On further search, the officers found

approximately fourteen grams of marijuana and a digital scale. (Id. at 8.) They then asked Bland to sign a rights waiver form indicating that she understood her Miranda rights and agreed to waive them. (Id.) After reviewing the form, Bland signed it. (Id.) She then told the officers that the handgun they had found on the kitchen table belonged to Johnson.[1] (Id.)

**II. Standard of Review**

"It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress." United States v. Quinney, 238 F. App'x 150, 152 (6th Cir. 2007) (citations omitted). "A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The district court is not required to review—under a de novo or any other standard—those aspects of the report and recommendation to which no specific objection is made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. Id. at 151.

---

[1] Johnson has been indicted for possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g).

4

**III. Analysis**

Johnson objects to the Magistrate Judge's factual findings only. (See Objections 1-3.) Specifically, Johnson "objects to the finding, by the Magistrate Judge, that the police officers who testified at the hearing on the motion to suppress were credible witnesses." (Id. at 1.) Johnson criticizes the Magistrate Judge for finding that Bland's testimony was not credible to the extent it conflicted with the Officers' testimony and then relying on it "to bolster or corroborate" their testimony when it did not conflict with theirs. (Id. at 2.) Johnson urges the Court to recognize that Bland had no motive to give false testimony, credit her testimony over the Officers' testimony, and conclude that MPD officers searched her house without consent on March 25, 2009, in violation of Johnson's constitutional rights.[2] (Id. at 2-3.)

"When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a de novo determination of the issues." United States v. Bermudez, 228 F.3d 424, 2000 WL 1871676, at *3 (6th Cir. Dec. 11, 2000) (citing United States v. Raddatz, 447 U.S. 667, 675–76, (1980)). "When reviewing a magistrate judge's credibility

---

[2] The parties do not dispute that Johnson has standing to raise this constitutional challenge. (See Report 9 n.6.)

5

determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determinations, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses he sees and hears." United States v. Robinson, No. 1:07-CR-1, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007) (citations omitted). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment." Id. (citations omitted).

Bryant's testimony about whether Bland had verbally consented to the search of her house was credible. Bryant testified that he went to Bland's door, and, when he asked to search her house, she gave the officers permission, saying, "I don't have anything to hide." (Tr. 22:13-23:2, 52:15-53:15, 72:1-4, 73:7-10, 80:3-11.) He also testified that the officers did not draw their weapons, threaten her, talk to her in raised voices, turn on their cars' lights and sirens, use a bullhorn, or anything similar. (Id. 23:3-20.) Bryant further testified that Bland reviewed and signed a written consent to search form in his presence after the officers had entered her house and secured Johnson. (See id. 25:1-28:19, 53:16-54:15, 60:18-24, 82:1-11.)

Overly's rebuttal testimony on the issue of verbal consent was credible and was consistent with Bryant's testimony on that issue. Overly testified that he went to Bland's door with Bryant, that Bryant asked permission for the officers to search her house, and that she gave them permission at the door, before they entered. (See id. 137:21-138:17, 149:7-20.) Like Bryant, he testified that the officers did nothing to threaten or intimidate Bland into giving that permission. (See id. 138:18-139:14.) Overly also testified that he was present when Bryant reviewed the consent to search form with Bland, he watched her sign the form, he signed it as a witness, and he did not recall Bryant saying anything to the effect that, if Bland signed the form, she and Johnson would not be charged. (See id. 141:25-142:18, 150:14-151:16.)

In contrast to the Bryant and Overly, Bland did not give credible testimony on the consent issue. Bland testified that the police did not ask for permission to come into her house before they entered, that the signature on the consent to search form did not look like her signature, and that Bryant told her if she signed the rights waiver form, neither she nor Johnson would be charged with possessing a handgun. (See id. 98:5-16, 99:10-16, 100:15-18, 104:8-16, 112:2-112:11, 113:5-11, 130:8-131:16.) On cross-examination, however, Bland contradicted

7

herself.[3] She testified multiple times that the officers had asked for permission to search her house before entering and that she had given them permission. (See id. 108:3-5, 110:9-14, 125:13-22, 128:13-129:4.) She also testified that she had previously admitted those facts in a telephone conversation with Dunn and the Government's counsel and in testimony before the grand jury. (See id. 115:13-116:10, 118:23-119.)

On cross-examination, it was also revealed that, although Bland's relationship with Johnson had ended, she had a reason to be evasive in her testimony. (See id. 94:15-95:9.) In a letter sent from prison, Johnson asked Bland to testify that she did not give the officers verbal permission to enter her house when she answered the door. (See id. 120:18-125:16.) On the day she was served with a subpoena to testify before the grand jury, Bland was robbed at gunpoint. (Id. 117:15-118:11.) She testified that she believed Johnson had something to do with the robbery. (Id.)

Having reviewed the record, the Court finds that the testimony of Bryant and Overly about whether Bland gave verbal consent to search her house was credible and that Bland's testimony on that issue was not. See United States v. Twitty,

---

[3] Although Bland did not directly contradict her testimony about signing the consent to search form, she did not affirmatively deny signing the form; she stated only that she did not recall completing the form and that the signature on it did not look like hers. (See, e.g., id. 112:20-113:13.) She was not asked about her statement that Bryant told her she and Johnson would not be charged if she cooperated.

8

No. 08-20345, 2009 WL 2516948, at *2 (W.D. Tenn. Aug. 14, 2009) (conducting a de novo review of a credibility finding based on a hearing transcript). That the Magistrate Judge cited portions of Bland's testimony that were consistent with the Officers' testimony does not undermine that finding. Because Johnson objects only to the Magistrate Judge's credibility findings, his objections are not well-taken.

**IV. Conclusion**

Based on the foregoing, Johnson's objections are OVERRULED. The Magistrate Judge's Report and Recommendation is ADOPTED, and Johnson's Motion to Suppress Evidence and Statements is DENIED.

So ordered this 30th day of August, 2011.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE